# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 09 CV 02857 REB-MEH

AMERICAN REPUBLIC INSURANCE
COMPANY, AN IOWA CORPORATION,

       Plaintiff,

       v.

GREAT-WEST LIFE & ANNUITY
INSURANCE COMPANY, A COLORADO
CORPORATION,

       Defendant.

## DECLARATION OF ELIZABETH A. POWELL

I, **ELIZABETH A. POWELL,** declare as follows:

1. This Declaration is given of my own personal knowledge.

2. I am Senior Vice President, Health Markets, with Plaintiff American Republic Insurance Company.

3. American Republic and its affiliated and subsidiary companies ("American Republic") provide health insurance policies to individuals and families and provide administrative services to those individuals and families under those policies. In addition, American Republic provides administrative services, including offering of a provider network, to

individuals and families who have purchased insurance polices from other companies. Provider networks are groups of health care providers who have contracted with an organization – in this case Great-West – to offer specified discounts to insureds who use the health care providers within the network.

4. American Republic does not have its own network of physicians and healthcare providers. Instead, American Republic contracts for networks from companies that have assembled networks of physicians and healthcare providers and negotiated discounts with those providers. American Republic's customers then access health care providers that belong to the leased networks to obtain their health care services.

5. On or about October 20, 2005, American Republic and its affiliated and subsidiary companies entered into a Network and Medical Management Services Agreement (the "Agreement") with Great-West Life & Annuity Insurance Company ("Great-West"), a true and correct copy of which, including all amendments thereto, is attached hereto as **Exhibit A**.

6. Pursuant to the Agreement, Great-West agreed, among other things, to make available its networks (the "Great-West Networks"), including an open access network and a PPO network, to American Republic. Accordingly, American Republic's customers, as well as the customers of its affiliates and administered business, access the Great-West Networks to obtain health care services.

7. At the time they entered into the Agreement, American Republic and Great-West were not in competition with each other. American Republic sells policies primarily to individuals and families, whereas Great-West sold primarily group policies. The two companies operated in separate business markets.

8. American Republic and Great-West shared many of the same goals in terms of network discounts, performance, and improvements without the threat of competition.

9. Great-West was motivated to obtain the best discounts possible for its own customers to access and it leased its networks to American Republic and allowed American Republic to access those same discounts.

10. Great-West had the incentive as well as a contractual obligation to continue to improve the Great-West Networks.

11. By aligning itself with Great-West, American Republic ensured that it too would get the benefit of this continuous network improvement.

12. American Republic is in direct competition with Connecticut General Life Insurance Company ("CIGNA").

13. By letter dated February 20, 2008, Great-West advised American Republic that Great-West had entered into an agreement to sell its US healthcare business to CIGNA and that as a part of the transaction, the Agreement would be assigned to CIGNA. A true and correct copy of this February 20, 2008, letter is attached hereto as **Exhibit B**.

14. At Great-West's request, American Republic consented to this assignment. American Republic provided notice of its consent to both Great-West and CIGNA. *See* March 14, 2008, letter from Elizabeth Powell to Kent Boyer (Great-West), a true and correct copy of which is attached hereto as **Exhibit C**.

15. From February, 2008 forward, American Republic understood that CIGNA had been assigned all of Great-West's rights and obligations under the Agreement, and

both Great-West and CIGNA began to behave as if the Agreement had in fact been assigned from Great-West to CIGNA.

16. During the summer of 2008, CIGNA advised American Republic that it no longer wanted to conduct business with American Republic under the terms of the Agreement and that instead it wanted to enter into a new contract with American Republic which would replace the Agreement.

17. The new contract proposed by CIGNA would have been between only American Republic and CIGNA (but not Great-West), which was consistent with American Republic's understanding that CIGNA succeeded to Great-West's rights under the Agreement.

18. American Republic engaged in negotiations with CIGNA during that time period, believing that CIGNA was responsible to American Republic under the terms of the Agreement.

19. In September of 2008, CIGNA orally advised American Republic that CIGNA had not assumed Great-West's rights and obligations under the Agreement. Instead, at that time, CIGNA advised American Republic that it was merely the "administrator" of the Agreement for Great-West.

20. CIGNA's attorneys confirmed this position in an October 10, 2008, letter to American Republic, a true and correct copy of which is attached hereto as **Exhibit D**.

21. In a December 18, 2008, letter to American Republic, Great-West supported CIGNA's position and claimed that Great-West did not assign the Agreement to CIGNA. A true and correct copy of this December 18, 2008, letter is attached hereto as **Exhibit E**.

22. On March 5, 2009 representatives of American Republic and CIGNA met in Chicago to negotiate new contract terms. During that meeting and in subsequent communications new contract terms were agreed upon.

23. However, when CIGNA reduced those terms to writing, CIGNA added terms that had not been agreed to by American Republic, with virtually all of them to CIGNA's advantage and American Republic's detriment. American Republic continued to negotiate in good faith by providing a draft agreement to CIGNA that more accurately reflected the parties' agreement. However, CIGNA refused to execute the written contract consistent with the parties' agreed upon terms, and negotiations stalled at that point.

24. Almost immediately after it became clear that American Republic and CIGNA could not agree on new terms, CIGNA unequivocally advised American Republic that it will breach the Agreement on January 1, 2010, by terminating American Republic's access to *any* open access network after January 1, 2010, and by requiring American Republic to put CIGNA's ID and logo on American Republic's customer identification cards sometime thereafter.

25. Specifically, CIGNA has advised American Republic that it will place all of American Republic customers – whether they currently belong to an open access or a PPO Network – into either a CIGNA "Shared Administration" PPO Network or a "GWH-CIGNA" PPO Network on January 1, 2010. *See* July 6, 2009, letter from Ronald Vance to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit F;** *see also*, November 24, 2009, letter from Ronald Vance to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit G.**

26. In addition, CIGNA has told American Republic that it must issue new identification cards to its insureds which must include CIGNA's name and logo. CIGNA originally stated that the identification cards must be changed by January 1, 2010. *See* September 9, 2009, email from Pamela Martin (CIGNA) to Tim Hegwood (American Republic), including attachment, a true and correct copy of which is attached hereto as **Exhibit H**.

27. However, on November 24, 2009, CIGNA advised American Republic that the requirement that the identification cards be changed will be delayed from January 1, 2010, to an unspecified future date. *See* November 24, 2009, letter from Ronald Vance to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit G**.

28. In addition, in that November 24, 2009 letter, **(Exhibit G)**, CIGNA advised American Republic that its customers will be transferred into a network called the "GWH-CIGNA PPO Network" on January 1, 2010, without reference to the "CIGNA Shared Administration PPO Network," which was referenced in CIGNA's July 6, 2009, letter **(Exhibit F)**. American Republic has not been told whether the GWH-CIGNA PPO and the CIGNA Shared Administration PPO Network are the same network or two separate networks.

29. Generally in the healthcare insurance industry, open access networks provide better discounts than PPO networks. Likewise, upon information and belief, the Great-West Open Access Network afforded approximately 2% better discounts, on the average, than Great-West's PPO Network.

30. Currently, a great deal of American Republic's customers are enrolled in a plan that provides them access to Great-West's Open Access Network. Approximately 19,915 policies – covering 35,930 lives across the country – are enrolled in the Open Access Network;

these policies provide healthcare coverage to about 35 % of American Republic's Major Medical customers.

31. However, according to CIGNA, it has been "merging" or "integrating" the Great-West Open Access and PPO Networks with CIGNA open access and PPO Networks. *See* December 3, 2009, letter from Ronald Vance to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit I**.

32. To the best of American Republic's knowledge, information, and belief, CIGNA is taking provider contracts from the Great-West Open Access Network, combining them with some existing and new CIGNA provider contracts, and renaming this combination of contracts as the "CIGNA Open Access Network."

33. It appears that American Republic's customers who had been in the Great-West Open Access Network began gaining access to the CIGNA Open Access Network sometime prior to July 6, 2009, when CIGNA merged the two groups of contracts into the one larger network. *See* July 6, 2009, letter from Ronald Vance to Elizabeth Powell, a copy of which is attached hereto as **Exhibit F.**

34. Thus, as a practical matter, American Republic's open access customers who had been in the Great-West Open Access Network are now gaining access to the "CIGNA" Open Access Network, which is comprised of a combination of provider contracts from the Great-West Open Access Network and CIGNA provider contracts.

35. CIGNA will refuse to allow American Republic or its customers to continue to access the CIGNA Open Access Network after January 1, 2010, despite the contractual guarantees to American Republic, including the guarantee to access to an open access

network, and despite the fact that the Great-West Open Access Network has been combined with CIGNA contracts and renamed that "CIGNA" Open Access Network.

36. On the other hand, CIGNA will continue to allow its own individual customers to access the CIGNA Open Access Network, after January 1, 2010.

37. Pursuant to Great-West and CIGNA's proposed changes, all of American Republic's customers, including its customers currently enrolled in the Great-West Open Access Network, will be shifted to the either the CIGNA Shared Administration PPO Network or the GWH-CIGNA PPO Network on January 1, 2010.

38. Upon information and belief, CIGNA's Open Access Network has better levels of discounts than the CIGNA Shared Administration or the GWH-CIGNA PPO Networks.

39. Despite repeated requests, CIGNA has also refused to provide American Republic with the financial information and discount data which would be necessary for American Republic to fully understand the implications of these proposed changes, to adjust its business models accordingly, to update pricing, and to provide its customers with meaningful information as to the providers they may access and at what discounts. *See e.g.*, September 10, 2009, letter from Elizabeth Powell to Ronald Vance, a true and correct copy of which is attached hereto as **Exhibit J**; September 18, 2009, mediation demand from Reed Smith to both CIGNA and Great-West, a true and correct copy of which is attached hereto as **Exhibit K**.

40. American Republic also has not been provided with information as to what healthcare providers and health systems its customers may access through the CIGNA Shared Administration PPO Network or the GWH-CIGNA PPO Network. There is reason to believe, however, that the roster of participating providers and systems will be different, at least in some instances.

41. American Republic has advised both CIGNA and Great-West that it objects to CIGNA's proposed changes and that the proposed changes will be a breach of the Agreement.

42. Great-West has been made fully aware of CIGNA's proposed actions.[1] Great-West is consenting to, condoning and/or supporting CIGNA's actions and has refused to take any action to ensure that CIGNA complies with the terms of the Agreement.

43. If Great-West and CIGNA breach the Agreement in the manners described above, which they have affirmatively stated they will do, American Republic and its customers will suffer immediate and irreparable harm.

44. If Great-West and CIGNA take the actions which they have indicated they will take on January 1, 2010, American Republic and its customers will no longer have access to any open access network.

---

[1] *See e.g.,* November 20, 2008, letter from Mike Fitzgerald to Richard Schultz (Great-West), a true and correct copy of which is attached hereto as **Exhibit L**; December 14, 2008, email from Mike Fitzgerald to David Aspinwall (Great-West), a true and correct copy of which is attached hereto as **Exhibit M**; December 18, 2008, letter from David Aspinwall to Mike Fitzgerald, a true and correct copy of which is attached hereto as **Exhibit E**; January 16, 2009, letter from Mike Fitzgerald to David Aspinwall, a true and correct copy of which is attached hereto as **Exhibit N**; February 2, 2009, letter from Mike Fitzgerald to David Aspinwall, a true and correct copy of which is attached hereto as **Exhibit O**; February 9, 2009, letter from David Aspinwall to Mike Fitzgerald, a true and correct copy of which is attached hereto as **Exhibit P**; May 15, 2009, letter from Elizabeth Powell to Ronald Vance and David Aspinwall, a true and correct copy of which is attached hereto as **Exhibit Q**; July 6, 2009, letter from Ronald Vance to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit F**; September 18, 2009, mediation demand from Reed Smith to both CIGNA and Great-West, a true and correct copy of which is attached hereto as **Exhibit K**; November 24, 2009, letter from Ronald Vance, copying David Aspinwall, to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit G**; December 1, 2009, letter from Elizabeth Powell to Ronald Vance and David Aspinwall, a true and correct copy of which is attached hereto as **Exhibit R**; December 3, 2009, letter from Ronald Vance, copying David Aspinwall, to Elizabeth Powell, a true and correct copy of which is attached hereto as **Exhibit I**.

45. If American Republic's customers are shifted from their current open access network to a PPO network on January 1, 2010, they will experience an immediate increase in their out-of-pocket costs to healthcare providers.

46. American Republic's customers often have high deductible amounts of as much as $5,000 or $10,000, which means that they are obligated to pay the first $5,000 or $10,000 of claims out of their own pockets. In addition, even after satisfying deductibles, many customers have a co-insurance obligation which means they are obligated to pay a portion of every claim out of their own pocket until reaching a maximum amount specified under the policy.

47. The claims paid directly by American Republic's customers are also subject to the discounts provided by the network. So if their network discounts are reduced, they will immediately begin to feel the financial effects because every doctor visit, routine test, x-ray, or hospital treatment will cost them more out of their own pockets.

48. It would be almost impossible to re-calculate what American Republic's customers' payments to their health care providers *should* have been if they are switched out of the Open Access Network now and wrongly forced to pay PPO rates for some period of time. In addition to re-pricing and re-paying claims, overpayments would have been made by individual customers to health care providers across the nation, making it almost impossible for American Republic or its customers to recoup those overpayments even if they could be calculated.

49. This harm will not be quantifiable or compensable by money damages.

50. The changes in provider coverage and level of discounts presents the possibility that some customers will leave American Republic.

51. American Republic will also have to undertake administrative burdens to effectuate the network changes that CIGNA and Great-West require. Implementing these changes will cost American Republic a significant amount in terms of employee time, expenses, and lost opportunities.

52. Such administrative upheaval threatens disruption or delay of administrative services provided by American Republic and may divert resources from the important areas of customer assistance and customer support, which in turn would result in customer confusion, inconvenience, and frustration.

53. In addition, when Great-West requires American Republic to put its competitor's logo – i.e. CIGNA's logo – on American Republic's customers' cards, CIGNA will gain a competitive advantage and American Republic will be at a competitive disadvantage, as American Republic will in effect be forced to advertise for CIGNA.

54. American Republic will be at a competitive disadvantage in placing new business because CIGNA is reserving the best discounts for itself and its customers while at the same time steering all of American Republic's customers into networks with less favorable discounts.

55. American Republic's customers – as well as anyone else who sees the American Republic identification cards, such as physicians or other health care providers – may be confused and believe that American Republic has somehow become part of the CIGNA conglomerate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 7, 2009, in Des Moines, Iowa.

/s/ Elizabeth A. Powell
Elizabeth A. Powell
601 6th Avenue
Des Moines, Iowa 50309

STATE OF <u>IOWA</u>  )
COUNTY OF <u>POLK</u>  )

Subscribed and sworn to before me, a Notary Public in and for said State and County, on this the 7th day of December, 2009.

/s/ Mary E. Huston
Notary Public

My commission expires: 12-9-09