**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No.  09-cv-02857-REB-MEH

AMERICAN REPUBLIC INSURANCE COMPANY, an Iowa corporation,

     Plaintiff,

v.

GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, a Colorado corporation,

     Defendant.

---

**ORDER DENYING MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

**Blackburn, J.**

     The matter before me is **Plaintiff American Republic's Motion for Temporary Restraining Order and Preliminary Injunction** [#4], filed December 8, 2009.  A previously scheduled hearing on that portion of the motion requesting a temporary restraining order was vacated on December 11, 2009.  (**See Minute Order** [#11], filed December 11, 2009.)  I heard testimony and received evidence on the motion for preliminary injunction at a hearing on January 14, 2010.  Having considered the evidence, arguments, and authorities, I find and conclude that the motion for preliminary injunction should be denied and that the motion for temporary restraining order denied as moot.

**I.  JURISDICTION**

     I have jurisdiction of this case pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

Because a preliminary injunction is an extraordinary remedy, plaintiff's right to relief must be clear and unequivocal.  *See Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).  Plaintiff is entitled to a preliminary injunction only if it proves that (1) there is a substantial likelihood that it will prevail on the merits; (2) it will suffer irreparable harm unless the preliminary injunction is issued; (3) the threatened injury outweighs the harm the preliminary injunction might cause defendant; and (4) the preliminary injunction if issued will not adversely affect the public interest.  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001).

Although plaintiff argues that its request for injunctive relief should be reviewed by a more lenient standard because it seeks to preserve the status quo, *see Bray v. QFA Royalties LLC*, 486 F.Supp.2d 1237, 1241-42 (D. Colo. 2007),[1] the injunction it seeks would provide it substantially all the relief it would receive following a verdict on the merits.  Such injunctions are particularly disfavored.  *See SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir. 1991), *overruled on other grounds by O*

_____

[1]  Under this standard, the likelihood of success element of preliminary injunctive relief is modified such that a plaintiff who makes a strong showing on the other three elements may satisfy the likelihood-of-success requirement "simply by raising questions so serious, substantial, difficult and doubtful as to make the issues ripe for litigation and deserving of more deliberative investigation."  *Bray*, 486 F.Supp.2d at 1241-42 (citation and internal quotation marks omitted).  I note that at least one court in this district recently has questioned the continued viability of this standard in light of the Supreme Court's decision in *Winter v. Natural Resource Defense Council, Inc.*, – U.S. –, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). *See Predator International, Inc. v. Gamo Outdoor USA, Inc.*, – F.Supp.2d –, 2009 WL 3526497 at *5 (D. Colo. Oct. 22, 2009).  As in *Predator International*, however, I need not address the issue here, since even if plaintiff were entitled to the benefit of this standard, it has not shown that the other three elements of injunctive relief "tip *decidedly* in its favor."  *Id.* (quoting *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir .2003)) (emphasis in *Heideman*, internal quotation marks omitted).

***Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft***, 389 F.3d 973, 975-76

(10th Cir. 2004) (en banc), ***aff'd***, 126 S.Ct. 1211 (2006).  Therefore, plaintiff's request for

injunctive relief "must be more closely scrutinized to assure that the exigencies of the

case support the granting of a remedy that is extraordinary even in the normal course."

***O Centro***, 389 F.3d at 975.

### III.  ANALYSIS

Plaintiff provides healthcare insurance policies and associated administrative

services to individuals and families.  It does not, however, have its own network of

healthcare providers.  Instead, it leases access to other insurers' provider networks.  On

October 20, 2005, plaintiff and defendant entered into such a network lease, pursuant to

which plaintiff was to receive access to "both Great-West's Open Access network . . .

and its PPO Network . . ."  (Trial Exh. A, Sixth Am.)  It is undisputed that the primary

difference between an open access network ("OAN") and a preferred provider ("PPO")

network is that the level of discounts available under the OAN is generally more

favorable than that offered by the PPO network.

In April, 2008, defendant sold its healthcare insurance business to Connecticut

General Life Insurance Company ("CG Life"), a subsidiary of CIGNA Corporation.

Although defendant initially requested that plaintiff consent to the assignment of the

contract to CIGNA, it later acknowledged that the request had been sent in error and

that, in fact, the contract had not been assigned, but was classified as an "administered

contract," meaning that it remained a contractual obligation of defendant albeit

administered by CG Life on defendant's behalf.   Nevertheless, CG Life has asserted its

3

intention not to renew defendant's network lease agreement with plaintiff when the contract expires at the end of 2010.

More to the point, CG Life also has informed plaintiff that it intends to move plaintiff's customers who formerly participated in defendant's OAN to its own PPO network. It is this proposal that forms the heart of the present dispute. Plaintiff objects that the contract entitles its customers to access an OAN and the greater discounts available thereunder. Indeed, plaintiff's OAN customers have had access to CIGNA's Open Access Plus ("OAP") network since the sale to CG Life. Therefore, plaintiff filed the present action and now seeks a preliminary injunction to prevent defendant from transitioning its customers who currently access the OAP to CIGNA's PPO network. Additionally, it seeks to prevent CG Life from requiring plaintiff to issue new identification cards to its customers bearing the CIGNA name and logo. Plaintiff claims that, in effect. this proposal requires it to advertise for a direct competitor and will put it at a competitive disadvantage. Plaintiff has filed substantive claims for anticipatory breach of contract and breach of the duty of good faith and fair dealing.[2] Having reviewed the parties' arguments and evidence, however, I find that plaintiff has not demonstrated its entitlement to the extraordinary remedy of a preliminary injunction.

### A. Likelihood of success on the merits

To secure a preliminary injunction, plaintiff first must establish that it is likely to prevail on the merits of its substantive claims. "The determination of a motion for a preliminary injunction and a decision on the merits are different," ***Valdez v. Applegate***,

---

[2] Plaintiff has asserted also a claim for indemnification, but that claim is not implicated by the present motion.

616 F.2d 570, 572 (10th Cir. 1980), and, thus, "[it] is not necessary that plaintiff[] show positively that [it] will prevail on the merits before a preliminary injunction may be granted," *Atchison, Topeka and Santa Fe Railway. Co. v. Lennen*, 640 F.2d 255, 261 (10th Cir. 1981).  Rather, plaintiff need only establish "a reasonable probability of success, . . . not an 'overwhelming' likelihood of success[.]" *Id.*

Plaintiff's primary claim is for anticipatory breach of contract.  Under Colorado law, "[a]n anticipatory repudiation of contract may occur upon a party's definite and unequivocal manifestation of its intention that it will not perform as required by the contract." *Highlands Ranch University Park, LLC v. Uno of Highlands Ranch, Inc*., 129 P.3d 1020, 1023 (Colo.App. 2005).  This standard presumes obviously that defendant's planned actions will be contrary to its contractual obligations.  Based on the evidence, however, I cannot say that plaintiff has shown a reasonable probability of success on the merits of this claim.

The contract provides that plaintiff is entitled to access "Great-West's Open Access Network."  There is no question but that an OAN by that name no longer exists.[3] Plaintiff nevertheless maintains that it is entitled to access the OAP, as it has been doing since consummation of the sale to CG Life, which it contends is the successor to defendant's OAN, and, therefore, required by the contract.[4]  Concomitantly, it argues that forcing its OAN customers to transition to CIGNA's PPO network, which offers less

---

[3] CIGNA's OAN and PPO networks now represent an amalgam of CIGNA's networks that existed prior to the purchase of defendant's healthcare insurance business and defendant's prior corresponding networks, made up of the most favorable provider contracts from each network.

[4] The evidence on this point is not entirely clear, but I ultimately find it irrelevant whether plaintiff's customers have had access to the OAP or some other OAN.

attractive discounts, is a violation of the contract's "most favored nation's" clause, which provides that plaintiff is entitled to receive "discounts equal to discounts provided by Great-West to other payors issuing individual and family insurance coverage under similar Network Agreements and Networks equal to or superior to other available comparable networks' depth of discounts and Provider coverage."  (Trial Exh. A § 3.1(B) at 4.)

Because the goal of contract interpretation is to effectuate the reasonable intentions of the parties, *See American Express Financial Advisors, Inc. v. Topel*, 38 F.Supp.2d 1233, 1239 (D. Colo. 1999), it is important at this juncture to note that CIGNA is what is referred to in the insurance industry as a "first tier" insurer, a designation which indicates both its size and scope and typically means that it is able to negotiate more favorable terms from providers for its insureds than less optimally situated insurers.  By comparison, when a company leases a network from another insurer, as plaintiff has done here, the discounts available to its customers are typically less than those that a first tier insurer provides to its own customers.  (*See* Vance Declaration ¶ 3 at 2 [#16], filed December 24, 2009.)

Considering these facts, at least one viable interpretation of the contract is that plaintiff was entitled to receive discounts equal or superior to what defendant offered to others with which it had network lease agreements.  Under that construction, CIGNA's OAP network, which provides discounts superior to any previously available from defendant under any of its networks, is not an "available comparable network" contemplated by the contract.   (*See* Trial Exh. A § 3.1(B) at 4.)  Although plaintiff

6

points out that the contract required defendant "to continuously benchmark and improve . . . discounts" (**see id.** at 17, Schedule B.1), this argument only the begs the question what level of discounts were reasonably contemplated by the parties at the time the contract was made. I cannot say on the record here that plaintiff has a reasonable probability of demonstrating that it had a reasonable expectation of securing discounts at the level available from a first tier insurer such as CIGNA when it entered into the network lease with defendant.[5] It is at least equally likely that discounts at that level have constituted a windfall to plaintiff and its OAN customers, as defendant maintains. In short, I find that plaintiff has failed to show a substantial likelihood of success on the merits of its claim for anticipatory breach.

Nor has plaintiff shown a substantial likelihood of success on the merits of its claim for breach of the duty of good faith and fair dealing. Under Colorado law "[e]very contract . . . imposes an obligation of good faith in its performance or enforcement." §4-1-304, C.R.S. Plaintiff argues that defendant has breached this duty by failing to provide it with accurate information regarding whether the contract had been assigned to CIGNA and by failing to clarify which of CIGNA's two OAN's plaintiff's customers currently access. However, the duty is not as far-reaching as plaintiff apparently conceives it:

> The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. The covenant may be relied upon only when the manner of

---

[5] Plaintiff presented no evidence showing how much its discounts improved from year-to-year prior to and after the sale of defendant's health insurance business to CG Life, which might suggest what its reasonable expectations in regard to discounts might be.

> performance under a specific contract term allows for
> discretion on the part of either party.

*Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).  Plaintiff points to no such

discretionary term of or duty arising under the contract here.  Instead, its complaint is

simply that defendant has not dealt fairly with it by withholding information or being

untruthful about its role following the sale of its health insurance business to CG Life.

Because the duty of good faith and fair dealing does not apply to such conduct, plaintiff

has failed to show a likelihood of success on the merits of this claim as well.

### B.  Irreparable harm

"To constitute irreparable harm, an injury must be certain, great, actual and not

theoretical."  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)

(citation and internal quotation marks omitted).  Harm that is "merely serious or

substantial" will not suffice.  *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250

(citation and internal quotation marks omitted).  Instead, "the party seeking injunctive

relief must show that the injury complained of is of such imminence that there is a clear

and present need for equitable relief to prevent irreparable harm."  *Id.* (emphasis in

original; brackets, citations, and internal quotation marks omitted).  Given these

standards, I find and conclude that plaintiff has failed to circumstantiate its claim that it

will sustain irreparable harm if the injunction is not granted.

Plaintiff maintains that it will suffer a loss of customer goodwill if defendant is

allowed to proceed with its plan to move plaintiff's OAN customers to the CIGNA PPO

network.  Loss of customer goodwill can constitute irreparable injury, *Hill's Pet*

*Nutrition, Inc. v. Nutro Products, Inc.*, 258 F.Supp.2d 1197, 1205 (D. Kan. 2003), but

8

plaintiff has failed to substantiate its assertion that goodwill in fact will be lost.  ***See***

***Dominion Video Satellite, Inc. v. Echostar Satellite***, 356 F.3d 1256, 1263 (10th Cir.

2004) (fact that irreparable harm may often arise from breach of a particular type of

contract does not permit presumption that irreparable harm will occur in any particular

case).  Although plaintiff's expert, William Krieger, testified that there would be a

"negative effect" on goodwill if customers were transferred from the OAN to the PPO

network (**Transcript** at 70 [#31], filed January 25, 2010), he failed to substantiate this

testimony in any particulars.[6]

Instead, plaintiff relied principally on the testimony of Elizabeth Powell, its Senior

Vice President, Health Markets, to flesh out the allegedly negative effect defendant's

proposal would have on customer goodwill.  It does not take too careful a reading of

Powell's testimony, however, to realize that any such harm is neither "certain" nor

"imminent," but instead wholly speculative:

> Q     In addition to the – your customers having to pay
>       more when they see providers if this change is made
>       will American Republic suffer harm?
>
> A     There ***may*** be other things that ***may*** happen because
>       of this change or that our customers will be disrupted.
>       That's a term we use to mean that the customers will
>       be unsettled by change.  So when we tell them they
>       now have a different network they are going to be
>       using they will have questions about why that is
>       happening.  When they see that they are paying a
>       higher rate for going to the doctor than they ***may*** have

---

[6]  Although plaintiff argued in its original motion that its customer goodwill also would be irreparably harmed by the inclusion of the CIGNA logo on plaintiff's customer identification cards, it did not address this argument at the hearing or include it in its post-hearing briefing.  I, therefore, consider that argument abandoned and do not consider it.  Even if I had, I suspect that plaintiff's evidence would be equally speculative.

> paid last month that again is something that will make
> them unsettled and not as confident in their coverage.
> The effect of that **could be** that they **may** go and
> search for alternative coverage.  It **may** prompt them
> to go shop in the marketplace.
>
> In addition, whenever our customers get disrupted or
> unsettled, the first person they usually call is their
> agent.  And when agents perceive that something is
> happening to the detriment of their customers or
> maybe to the product that we offer, **it's very possible**
> that they may decide that they want to take their
> business to a different company rather than send it to
> American Republic.

(**Id.** at 20-21 (emphases added).)  Such an attenuated chain of events demonstrates

that the harm to customer goodwill plaintiff fears may occur as a result of defendant's

actions is pure surmise and conjecture.  **See Greater Yellowstone Coalition v.**

**Flowers**, 321 F.3d 1250, 1258 (10th Cir. 2003) (although injury need not be proved to a

certainty, plaintiff must show a "significant risk" of irreparable harm).  Accordingly,

plaintiff has failed to sustain its burden of proof with respect to demonstrating

irreparable harm on this basis.  **See RoDa Drilling Co v. Siegal**, 552 F.3d 1203, 1210

(10th Cir. 2009); **Maximus, Inc. v. Thompson**, 78 F.Supp .2d 1182, 1189 (D. Kan.

1999).

Plaintiff contends also that if it is eventually determined that defendant did not

have the right to switch OAN customers to the PPO network, attempting to reprice

individual customer transactions would be so difficult as to constitute irreparable injury.

I am not persuaded.  While it is clear that the task would be complicated, I cannot find

from the evidence presented that it would be so onerous as to be insurmountable.  It is

clear that repricing of claims is common in the insurance industry.  Discovery certainly

can provide plaintiff with the evidence it would need to undertake such a task should it prove necessary.  Nor was there any evidence presented suggesting that the allegedly substantial administrative burden it would impose on plaintiff to reprocess any wrongly priced claims post-judgment could not be reasonably compensated in money damages as well.  The alleged injury, therefore, constitutes "simple economic loss [which] does not, in and of itself, constitute irreparable harm."  **Heideman**, 348 F.3d at 1189.

### C.  Balance of harm and public interest

Finally, I find that the balance of harm does not clearly favor plaintiff in this case and that the public interest is not implicated.  Addressing these elements in reverse order, I note that plaintiff cannot rely on any alleged harms to its customers as establishing the public interest element, as the contract specifically provides that "no other person or entity shall have any rights, interest, or claims hereunder or be entitled to any benefits hereunder or on account of this Agreement as a third party beneficiary or otherwise, including, but not limited to, Members and Participating Providers."  (Trial Exh. A § 9.14 at 14.)  Thus, although plaintiff argues that lower health care costs constitute a public benefit, it has neither argument nor evidence to establish that the larger public apart from its own customers will enjoy lower health care costs if the injunction is granted.  Indeed, like many contract disputes, this one appears unlikely to have any larger public impact beyond the parties.

As for the balance of harm, the evidence suggests that the alleged burden to plaintiff of repricing claims should the injunctive be denied improvidently would be felt at least as equally by defendant if the injunction were granted improvidently, and, thus,

makes this element essentially a wash.  *See Wilderness Workshop v. United States Bureau of Land Management*, 531 F.3d 1220, 1231 (10th Cir. 2008); *Mid-West Conveyor Co. v. Jervis B. Webb Co.*, 1994 WL 133008 at *3 (D. Kan. March 21, 1994).  Thus, plaintiff has failed to sustain its burden of proof as to this element as well.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Plaintiff American Republic's Motion for Temporary Restraining Order and Preliminary Injunction** [#4], filed December 8, 2009, is **DENIED AS MOOT IN PART** and **DENIED IN PART** as follows:

a.      That the motion for temporary restraining order is **DENIED AS MOOT**; and

b.      That the motion for preliminary injunction is **DENIED**.

Dated February 17, 2010, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge